Curia, per

Wardlaw, J.
Procuring a slave already absent to continue absent from his owner’s service, is a tortious act, no less than procuring one to depart from ser *322 vice — but there is such a difference between the acts, that proof of one does not sustain the allegation of the other. If under the proposition that a slave runaway is still constructively in the possession of his owner, it be maintained that a continuance of his absence is a new commencement of it, it might well be replied that in this view the constructive possession would remain after the continued absence, so that a continuance of the absence could not be said to be a departure from the possession. But without this refinement, it is clear here, as it was below, that the scienter is essential to either of these counts, and that of it there was no proof.
An act merely tortious or unlawful may constitute a legal injury, without being wilful or malicious, (Willes, 577,) and without knowing Frank to be a slave, the defendant may have acted towards him so negligently or so unlawfully as to have done an injury for which an action lies; but the case must be decided as it is presented, and the proof and the allegations must concur to sustain it.j
The serious question is whether there was a conversion.
Conversion is an appropriation of another’s property ,• change of ownership is implied by it. The change may be temporary or perpetual, but so strongly has our court insisted on this change as resulting from conversion, that when a verdict in trover is rendered whilst the chattel remains out-of the possession of the plaintiff, the judgment for the plaintiff is itself without satisfaction, (which satisfaction is insisted upon elsewhere, 8 Cowen, 43,) considered here to be an acknowledgment by the plaintiff that the title has by conversion been transferred from him, (Rogers and Thompson vs. Moore, Rice, 60; Welburn ads. Bogan, 1 Speers, 182.) Of the conversion, evidence may arise from a tortious taking, from a refusal to deliver upon demand, or from use negativing the plaintiff’s right. Any act in exclusion or defiance of the plaintiff’s right, any assumption of property and of the right of disposition, any intermeddling indicating a claim of ownership, any assertion of the control which belongs to the owner, whether for the benefit of the defendant or of a third person, may furnish proof of the conversion. But the idea of *323 property is of the essence of a conversion. Even where; the chattel from its nature is necessarily known to be property, an interference with it, under circumstances which shew the owner’s fight to be undisputed, even with injurious consequences to the owner, does not amount to a conversion ; as where goods are thrown overboard to save a ship, (2 Bulst. 280,) or where a work of charity or kindness to the owner is intended, (4 Esp. 165.) No intention of gain to the wrongdoer, or to any one else, is essential, if an injury be done to the owner by an act negativing his right of property. But when the chattel is not known to be property, there can be no interference with the ownership, and no conversion without an appropriation. In such* a case, a defendant might in some other form of action be made to answer for any benefit acquired by himself or for any injury done to the plaintiff by a wrongful act, but if he did not use the chattel as property, he could not in trover be held to have converted it.
It is, then, in the casé before us, essential to inquire whether the defendant knew Frank to be a slave. If he did, his acts of interference may amount to an assertion of his right as owner, and the consequence of these acts may be damages which have resulted from his conversion. But if he did not, the treatment of Frank as a servant, and consequent facilities of escape afforded to him, may have been acts in themselves lawful — certainly did not indicate an assertion of property.
This court is satisfied with the course taken by the circuit Judge, in refusing the motion for a non-suit, and leaving the circumstances, with proper instructions, to the jury. It is true that in the case of Hoover vs. Alexander, 1 Bail. 510, a non-suit was ordered and sustained, where a slave had been seen at work in the defendant’s field, but there was no proof that it was with the defendant’s knowledge, although possibly the jury might in the circumstances have found evidence of knowledge sufficient to have established the conversion. But in the main it is better, when there is any reasonable evidence of the fact to be established, to submit the question to the jury, than to order a non-suit for want of evidence. A verdict finding *324 the fact contradicts the assumption that the evidence is insufficient; and a verdict negativing it, concludes the case, as a non-suit does not. Where, however, a case involves, as this does, the character of a party proved to be respectable, and depends upon nice legal distinctions, this court, if not itself satisfied with the proof, prefers to let another jury pass upon the matter, after an authoritative exposition of the law involved. If the acts of interference done by the defendant had occurred in a State where slavery does not exist, the case of Quay vs. McNinch, 2 Mill’s Law Rep. 78, would be a direct authority to show that they do not amount to a conversion. They occurred, however, in North Carolina, and there, as here, the African blood is prima facie evidence of slavery. But the presumption arising from blood, like other presumptions, may be rebutted. In the case of Bell vs. Lakin, 1 McMul. 364, in this State a slave found in the actual enjoyment of freedom, and thence reputed to be free, was treated as free by the defendant, to’the injury of the owner, yet with impunity. Here one of doubtful color, passing as free in a public conveyance, was taken as his servant by the defendant. Upon the count in trover, it must be left to the jury to decide whether the defendant regarded him as free, or as a slave.
A new trial is therefore ordered.
RxchabdsoN, O’Neall, Butler and Frost, JJ. concurred.